IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:03CR3100 |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY S. DEGARMO, | ) | MEMORANDUM AND ORDER ON |
| | ) | DEFENDANT'S MOTION TO STRIKE |
| Defendant. | ) | |
| | ) | |

The defendant, Timothy S. DeGarmo, has moved to strike allegations appearing in the "Further Factual Finding" section of the Second Superceding Indictment. (See Mot. to Strike, filing 88.) For the following reasons, the defendant's motion will be granted in part.

**I.   BACKGROUND**

On August 19, 2004, a two-count Second Superseding Indictment (the Indictment) was filed against the defendant. (See filing 66.) Count I alleges that the defendant "did knowingly and intentionally . . . conspire . . . with other persons . . . to unlawfully distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine . . . in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1) . . . [i]n violation of Title 21, United States Code, Section 846." (Id. at 1.) Count II alleges that, "[a]s a result of the crime alleged in Count I, the defendant . . . shall forfeit to the United States any and all property derived from any proceeds the defendants [sic] obtained directly or indirectly as a result of said violation, and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violation alleged in Count I of this Indictment, including, but not limited to . . . $500 seized by the Lincoln Police Department on July 26, 2003, . . . [i]n violation of Title 21, United States Code, Section 853." (Id. at 1-2.)

In addition to these two counts, the Indictment alleges,

1

FURTHER FACTUAL FINDING

>During the commission of the offense identified in Count I above, [the defendant]: 1) did conspire, distribute and possess with intent to distribute at least 5 kilograms of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers and salt of its isomers, a Schedule II controlled substance; 2) did posses 9mm ammunition when he was a prohibited person to wit: a felon; 3) did possess a dangerous weapon, including firearms; 4) is a career criminal by virtue of three prior felony convictions; and 5) played an aggravating role in that he was a manager or supervisor and the criminal activity involved five or more participants.

(Filing 66 at 2.)  The allegations set forth in this section of the Indictment did not appear in the previous "version" of the indictment.  (Compare filing 43 with filing 66.)

On September 6, 2004, the defendant moved to continue the trial, arguing that the "enhancements . . . dramatically change[d] the scope and character of this indictment."  (See filing 70 at 1; filing 71 at 1.)  This motion was granted on September 7, 2004, and the trial was continued until November 15, 2004.  (See Order, filing 73.)

On November 10, 2004, the defendant filed the instant motion to strike, arguing that the "Further Factual Findings" alleged in the Indictment must be stricken for various reasons.  (See filings 88, 89.)  The defendant's arguments are based mainly upon the notion that the Supreme Court's decision on Blakely v. Washington, 124 S. Ct. 2531 (2004), would be applied to the United States Sentencing Guidelines, thereby rendering sentence enhancements invalid "unless a jury determines beyond a reasonable doubt whether they exist."  (Filing 89 at 1.)  The defendant also moved for a continuance pending the publication of the Supreme Court's opinion in United States v. Booker and United States v. Fanfan.  (See filing 90 at 1.)   On November 19, 2004, I ordered that the motion to strike be held in abeyance and that the trial be continued until after Booker and Fanfan were resolved.  (See Order, filing 93.)

On January 12, 2005, the Court issued its decision in Booker v. United States, 125 S. Ct. 738 (2005).  (See Order, filing 93.)  Thereafter, a pretrial hearing was scheduled for May 9, 2005, and trial was scheduled to begin on May 16, 2005.  (See Order Scheduling Jury Trial, filing 97.)

On May 9, 2005, the pretrial hearing was held as scheduled.  At this hearing, the

defendant argued that his motion to strike the "Further Factual Findings" section of the Indictment should be granted in light of Booker. Specifically, he argued the facts alleged in the "Further Factual Findings" section of the Indictment should be stricken because they "are not material elements of either count I or count II," but are merely surplusage. At the same time, the defendant asserted that pursuant to Booker, the jury should be instructed that "any fact which could increase the punishment beyond that charged in the indictment in counts I and II" must be proven to them beyond a reasonable doubt. The defendant admitted, however, that Booker does not require "explicitly" that this be done.

In response, the government stated initially that striking the "Further Factual Findings" would not be problematic because under Booker, the court is allowed to make determinations regarding sentencing enhancements based on the evidence presented at trial. However, the government added that it would be permissible to allow the jury to determine the enhancements–other than the enhancement regarding the defendant's status as a "career criminal."[1] The government then suggested that the jury should make determinations regarding the defendant's possession of ammunition and his managerial role in the charged conspiracy. I asked counsel whether, if the jury has to make a finding about a matter that may increase the sentence, that matter must be "alleged somewhere." The government pointed out that facts that supported sentence enhancements were not alleged in indictments prior to the Booker line of cases, but could not say whether such facts must now be alleged in indictments. I therefore asked the government to submit authority on the question of whether the "Further Factual Findings" ought to remain in the Indictment. On May 13, 2005, the government submitted its brief, along with an argument that the "Further Factual Finding" section of the Indictment should indeed be

---

[1] It is clear that the "Further Factual Finding" concerning the defendant's status as a "career criminal" by virtue of his prior felony convictions need not appear in the Indictment because it need not be proved to the jury. See Booker v. United States, 125 S. Ct. 738, 756 (2005) ("Accordingly, we reaffirm our holding in Apprendi [v. New Jersey, 530 U.S. 466 (2000)]: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (Emphasis added)); United States v. Marcussen, 403 F.3d 982, 984 (8th Cir. 2005) I therefore find that the "career criminal" allegation should be stricken from the Indictment.

stricken. My analysis of the defendant's motion to strike follows.

## II. ANALYSIS

There appears to be no dispute that the allegations set forth in the "Further Factual Finding" section of the indictment are not elements of charged offenses, but are "factors relevant only to the sentencing of an offender found guilty of the charged crime[s]." Almendarez-Torres v. United States, 523 U.S. 224, 228 (1998). Prior to the Apprendi v New Jersey, 530 U.S. 466 (2000), line of cases, which includes the recent decisions in Blakely v. Washington, 124 S. Ct. 2531 (2004), and Booker v. United States, 125 S. Ct. 738 (2005), it was clear that "sentencing factors" need not be set forth in an indictment. See, e.g., Almendarez-Torres, 523 U.S. at 228. However, in Apprendi, the Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Booker, 125 S. Ct. at 756. In Blakely, Justice Breyer raised the question of whether, if the Apprendi rule were applied to the United States Sentencing Guidelines, indictments must "contain all sentencing factors, charged as 'elements' of the crime." Blakely, 124 S. Ct. at 2561 (Breyer, J., dissenting). It would seem that this contingency is precisely what the "Further Factual Finding" section of the Indictment was meant to address. However, as I shall explain, the answer to the question posed by Justice Breyer is "no," and the "Further Factual Findings" shall neither appear in the indictment nor be presented to the jury at trial.

In Booker, the Supreme Court addressed the constitutionality of the United States Sentencing Guidelines and "reaffirmed" the rule set forth in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), which I have quoted above. See Booker, 125 S. Ct. at 756. The Court concluded that, since the Guidelines required courts to impose sentences longer than those that would be authorized by the jury verdict or guilty plea alone, the Guidelines violated the Sixth Amendment. See id. at 751-52. To remedy this violation, the Court rendered the Guidelines "effectively advisory," id. at 757, by severing and excising two specific statutory provisions of the Federal Sentencing Act: "the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure), see 18 U.S.C. § 3553(b)(1) (Supp.2004), and the provision that sets forth standards of review on

appeal, including de novo review of departures from the applicable Guidelines range, see § 3742(e) (main ed. and Supp.2004)," id. at 764.  The Court stated quite explicitly that as modified, the Federal Sentencing Act "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 757 (citations omitted).

It is important to note that the Court's remedy for the Sixth Amendment violation that inhered in the mandatory Guideline system did not consist of grafting the Apprendi rule (i.e., a "jury factfinding" requirement) onto the Guidelines.  On the contrary, the Court discussed several reasons why Congress would not have desired a mandatory sentencing scheme that depended upon jury factfinding for all sentence enhancements.  First, the Court noted that the Federal Sentencing Act provided specifically for judicial factfinding.  See Booker, 125 S. Ct. at 759.  Second, the Court stated that "Congress' basic statutory goal--a system that diminishes sentencing disparity--depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction." Id.  It added,

> [Engrafting a jury factfinding requirement onto the mandatory Guideline system] would prevent a judge from relying upon a presentence report for factual information, relevant to sentencing, uncovered after the trial.  In doing so, it would, even compared to pre-Guidelines sentencing, weaken the tie between a sentence and an offender's real conduct.  It would thereby undermine the sentencing statute's basic aim of ensuring similar sentences for those who have committed similar crimes in similar ways.

Id. at 760.[2]  The Court then stated,

> Third, the sentencing statutes, read to include the Court's Sixth Amendment requirement, would create a system far more complex than Congress could have intended.  How would courts and counsel work with an indictment and a jury trial that involved not just whether a defendant robbed a bank but also how?  Would the indictment have to allege, in addition to the elements of robbery, whether the defendant possessed a firearm, whether he brandished or discharged it, whether he threatened death, whether he caused bodily injury, whether any such injury was ordinary, serious, permanent or life threatening, whether he abducted or physically restrained anyone, whether any victim was unusually vulnerable,

---

[2]It merits mention too that 18 U.S.C. § 3661, which provides, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," remains valid.  See Booker, 125 S. Ct. at 760.

>how much money was taken, and whether he was an organizer, leader, manager, or supervisor in a robbery gang? See USSG §§ 2B3.1, 3B1.1. If so, how could a defendant mount a defense against some or all such specific claims should he also try simultaneously to maintain that the Government's evidence failed to place him at the scene of the crime?

Id. at 761-62. The Court also noted that a sentencing scheme based upon jury factfinding would present problems in plea bargaining, see id. at 762-63, and observed that Congress did not intend a sentencing scheme in which it would be easier for sentences to be adjusted downward than upward, see id. at 763. In light of these considerations, the Court determined that the constitutional violation inherent in the Guidelines ought not be remedied by grafting the Apprendi rule onto the Guideline scheme, but by severing and excising the aforementioned sections of the Sentencing Act, thereby rendering the Guidelines "advisory." See Booker, 125 S. Ct. at 764-68.

The Eighth Circuit Court of Appeals has now clearly defined the sentencing procedure that a court must engage in after Booker. See United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir. 2005). The first step in this procedure is the determination of the appropriate guidelines sentencing range. See id. Regarding this step, the court stated that it sees "nothing in Booker that would require the court to determine the sentence in any manner other than the way the sentence would have been determined pre-Booker." Id. at 1003. The court continued,

>Moreover, although the Court in the Substantive [Booker] Opinion prohibits a sentencing judge from finding any facts that enhanced a Guidelines sentence above the range that is based solely on facts found by the jury in its verdict or admitted by the defendant, the Court in its Remedy Opinion contemplates that, with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection. Thus, the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence.

Id. (quoting United States v. Crosby, 397 F.3d 103, 112 (2d Cir. 2005)) (emphasis added). Furthermore, "Nothing in Booker suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime." United States v. Pirani, No. 03-2871, 2005 WL 1039976, at *5 n.4 (8th Cir. April 29, 2005) (en banc).

In view of the foregoing, it is clear that courts are not limited to sentencing defendants based upon conduct that the government chooses to charge in an indictment. The sentencing judge may exercise his or her "traditional authority," including the reliance upon presentence reports, to make all factual findings relevant to sentencing. See Haack, 403 F.3d at 1002-03; Booker, 125 S. Ct. at 760-64; 18 U.S.C. §§ 3552, 3661. It is also clear that I must reject the defendant's argument that the sentence enhancements set forth in the "Further Factual Finding" section of the Indictment must be proven to the jury beyond a reasonable doubt.[3] I will make findings concerning these enhancements in accordance with the remaining provisions of the Sentencing Act, which require me "to take account of the Guidelines together with other sentencing goals." Booker, 125 S. Ct. at 764 (citing 18 U.S.C.A. § 3553(a) (Supp. 2004)). See also Haack, 403 F.3d at 1002 (quoting Crosby, 397 F.3d at 113).

I find that Booker has not abolished the distinction between elements, which must be set forth in an indictment, and sentencing factors, which need not be. See, e.g., Almendarez-Torres v. United States, 523 U.S. 224, 228 (1998). Therefore, the "Further Factual Findings" set forth in

---

[3]Indeed, I find that it is not appropriate to submit these enhancements to the jury at all. In the aftermath of Booker, the Eighth Circuit Court of Appeals has had occasion to explain how Booker should be applied to cases pending on direct appeal. See, e.g., United States v. Pirani, No. 03-2871, 2005 WL 1039976 (8th Cir. April 29, 2005). In Pirani, the court identified two ways in which the Sixth Amendment violation defined in Booker might be avoided. See id. at *5. First, sentences that were imposed under the "mandatory guidelines regime" would not violate the Sixth Amendment if the enhancements were limited to "those consistent with the jury verdict." Id. In other words, sentence enhancements based upon facts found by the jury beyond a reasonable doubt do not violate the constitution. Second, a sentence presents no Sixth Amendment problem if it is enhanced based upon judge-found facts that are applied in an "advisory guidelines regime." Id. Although the first method of avoiding Sixth Amendment violations discussed in Pirani is useful for the court of appeals' review of sentences that were imposed in cases pending on direct review prior to Booker, it does not follow that sentencing courts should use this method in the post-Booker era. On the contrary, and as I have explained above, the Supreme Court stated clearly that this method is problematic, see Booker, 125 S. Ct. at 759-63, rejected the grafting of a jury factfinding requirement onto the Guidelines, and held instead that judges are to sentence defendants under the "advisory" guidelines regime, id. at 757. The Eighth Circuit has confirmed that this is the correct approach, holding that judges are to find facts relevant to the determination of the sentence. See United States v. Haack, 403 F.3d 997, 1002, 1003 (8th Cir. 2005) (quoting United States v. Crosby, 397 F.3d 103, 112, 113 (2d Cir. 2005)); United States v. Mooney, 401 F.3d 940, 949 (8th Cir. 2005).

the Indictment will be stricken, though, as I have explained above, this does not mean that they will not be relevant at sentencing should the defendant be convicted.[4]

**IT IS ORDERED** that the defendant's motion to strike, filing 88, is granted to this extent: the "Further Factual Findings" alleged in the Second Superceding Indictment, filing 66, will be stricken.

Dated May 16, 2005.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

---

[4] The defendant has submitted an additional argument that may eliminate the "ammunition" enhancements from consideration at sentencing. He argues, "In the second numbered paragraph of the "Further Factual Finding" section . . . the government alleges that Defendant 'did possess 9mm ammunition, when he was a prohibited person,' that is, a convicted felon. . . . This allegation probably relates to the illegal seizure and search of Defendant on June 13, 2003. It is Defendant's position that this ammunition and Defendant's alleged possession of it has been suppressed." (Filing 89 at 3-4.)   I express no opinion on these arguments at this time.