IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:03CR3100 |
| | ) | |
| Plaintiff, | ) | MEMORANDUM AND ORDER ON |
| | ) | DEFENDANT'S MOTION TO VACATE, |
| v. | ) | SET ASIDE OR CORRECT SENTENCE |
| | ) | PURSUANT TO 28 U.S.C. § 2255 |
| TIMOTHY S. DEGARMO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

On May 22, 2007, the defendant, Timothy S. DeGarmo, filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," (see filing 175), and a "Motion for an Evidentiary Hearing," (see filing 176). My analysis of the defendant's motions follows.

## I.   BACKGROUND

An indictment filed on July 24, 2003, charged the defendant with conspiring to distribute and possess with the intent to distribute methamphetamine in violation of 21 U.S.C. § 846. (See filing 1.) On July 30, 2003, the defendant appeared before United States Magistrate Judge David L. Piester for arraignment and entered a plea of not guilty. (See filing 4.) The magistrate judge ordered that the defendant be detained pending trial, (see filing 6), and granted the defendant's request for appointment of counsel, (see filing 4). Michael T. Levy entered an appearance as attorney for the defendant. (See filing 3.)

On September 5, 2003, Mr. Levy requested leave to file out-of-time a motion to suppress evidence obtained during a warrantless search of the defendant's person on June 13, 2003. (See filing 8.) This motion was granted, and the defendant was given until September 30, 2003, to file the motion to suppress. (See filing 9.) On September 24, 2003, Mr. Levy moved for an enlargement of time to file the motion to suppress, (see filing 10), and this motion was granted on October 2, 2003, (see filing 11).

1

On October 5, 2003, Mr. Levy filed a motion for a hearing to determine whether the defendant was competent to proceed to trial. (See filing 12.) See also 18 U.S.C. § 4241. The magistrate judge granted this motion in an order dated October 6, 2003, and ordered that the defendant be remanded to the custody of the Attorney General of the United States for a competency examination. (See filing 13.)

On December 26, 2003, Mr. Levy filed another request for leave to file a motion to suppress evidence obtained from the defendant's person on June 13, 2003. (See filing 16.) This motion was granted on December 29, 2003, and the motion to suppress, which was filed on December 26, 2003, along with Mr. Levy's request for leave, (see filings 17-18), was set for hearing, (see filing 19). Shortly thereafter, on January 1, 2004, Mr. Levy filed a "Motion for Review of Detention and for Release Upon Conditions and Request for Evidentiary Hearing." (See filing 20.) The brief filed in support of this motion alleges that the defendant had been held in custody pending trial for more than ninety days, in contravention of 18 U.S.C. § 3164(c). (See filing 21 at 2.) The brief also states, "Counsel cannot in good faith argue that the defendant should benefit from counsel's failure to obtain the defendant's permission to file a motion for an evaluation to determine whether defendant is competent to assist in his own defense and will merely submit the matter to the Court for decision. Counsel will, of course, furnish copies of the motion and this brief to the defendant, who is free to submit his own argument." (Filing 21 at 2.)

On January 21, 2004, the defendant requested that Mr. Levy be removed from the case. (See filings 24, 25.) Hearings on the question of the defendant's competence to proceed and the motion to suppress evidence were continued, and a hearing on the defendant's request to remove Mr. Levy was scheduled for January 29, 2004. (See filing 25.) On January 29, 2004, the magistrate judge granted the defendant's request, and Mr. Levy was "withdrawn from this case." (Filing 26.) On February 20, 2004, Michael D. Gooch entered an appearance as attorney for the defendant. (See filing 29.)

On February 26, 2004, Mr. Gooch filed a motion requesting a "prompt competency determination," a motion to dismiss the indictment pursuant to 18 U.S.C. § 3161, a motion for a review of the defendant's detention pursuant to 28 U.S.C. § 3164, and a motion to withdraw the motion to suppress. (See filings 30, 31, 33, 35.) On February 27, 2004, the magistrate judge

entered an order granting the motion for a hearing to determine competency, denying the defendant's motions for a review of his detention, and granting the motion to withdraw the motion to suppress.  (See filing 36.)  Mr. Gooch then filed an objection to the magistrate judge's order denying the defendant's motions for a review of his detention.  (See filing 37.)

A competency hearing was held on March 12, 2004, and the magistrate judge concluded that the defendant was competent to stand trial.  (See filing 41.)  On March 16, 2004, the magistrate judge recommended that the defendant's motion to dismiss the indictment be denied and determined that the defendant's objections to the denial of his motions for a review of detention should also be denied.  (See filing 42.)

A superseding indictment was filed on March 17, 2004.  (See filing 43.)  The superseding indictment altered the dates of the alleged conspiracy and added a second count listing property subject to forfeiture under 21 U.S.C. § 853.  (See id.)

On March 26, 2004, Mr. Gooch filed an objection to the magistrate judge's recommendation that the motion to dismiss be denied.  (See filing 45.)  The objection was overruled, and the magistrate judge's recommendation was adopted in an order filed on May 12, 2004.  (See filing 52.)

On April 11, 2004, Mr. Gooch filed a motion to suppress "evidence obtained from a warrantless search of Defendant's person on June 13, 2003."  (Filing 48.)  A hearing was held on June 10, 2004, regarding this motion, (see filing 54), and on June 21, 2004, the magistrate judge recommended that the motion to suppress be denied in all respects, (see filing 57).  Mr. Gooch filed an objection to the magistrate judge's recommendation, (see filing 59), and in an order dated July 20, 2004, I sustained the objection and granted the defendant's motion to suppress, (see filing 64).

A second superseding indictment was filed on August 19, 2004.  (See filing 66.)  The second superseding indictment differed from the first superseding indictment in two respects.  First, a change was made to a list of property subject to forfeiture under § 853.  (Compare id. at 2 with filing 43 at 2.)  Second, the second superseding indictment included a new paragraph entitled "Further Factual Finding."  (Compare filing 66 at 2 with filing 43 at 2.)  This paragraph states,

3

> During the commission of the offense identified in Count I above, [the defendant]: 1) did conspire, distribute and possess with intent to distribute at least 5 kilograms of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers and salt of its isomers, a Schedule II controlled substance; 2) did posses 9mm ammunition when he was a prohibited person to wit: a felon; 3) did possess a dangerous weapon, including firearms; 4) is a career criminal by virtue of three prior felony convictions; and 5) played an aggravating role in that he was a manager or supervisor and the criminal activity involved five or more participants.

(Filing 66 at 2.)  Ultimately, this "Further Factual Finding" paragraph was stricken from the second superseding indictment.  (See filings 88, 90, 91, 93, 103.)

On September 24, 2004, Mr. Gooch filed a new motion for a review of the defendant's detention.  (See filing 75.)  An order setting the conditions of the defendant's release was filed on November 8, 2004, and it appears that the defendant was released after posting ten percent of a $5,000 appearance and compliance bond.  (See filings 83, 85.)

On May 6, 2005, Mr. Gooch filed a motion to dismiss the case "on speedy trial grounds." (Filing 98.  See also filing 101, Def.'s Ex. 100.)  This motion was heard on May 9, 2005, and denied in an order issued later that same day.  (See filings 100-102.)  Also on May 9, 2005, the defendant made an oral motion to sequester witnesses at trial.  (See filing 100.)  This motion was granted.  (See id.)

A five-day jury trial commenced on May 16, 2005.  (See filings 104, 110, 116, 119, 124.) On May 20, 2005, the jury found the defendant guilty on the charge of conspiracy.  (See filing 124.)[1]  On August 15, 2005, I sentenced the defendant to a 300-month term of imprisonment and a five-year term of supervised release with special conditions, and I ordered him to pay a special assessment in the amount of $100.  (See filings 139, 143.)  The defendant's conviction and sentence were affirmed by the Eighth Circuit on June 15, 2006.  See United States v. DeGarmo, 450 F.3d 360 (8th Cir. 2006), cert denied, 127 S. Ct. 516 (2006).  On May 22, 2007, the defendant filed the instant motions.  (See filings 175-76.)

---

[1]Count II of the second superseding indictment was dismissed prior to trial.  (See filing 104.)  Thus, the defendant proceeded to trial on the conspiracy charge only.

4

## II.    STANDARD OF REVIEW

Section 2255 "provides that a prisoner in custody under sentence of a federal court may file a motion in the 'court which imposed the sentence to vacate, set aside, or correct the sentence.'" Hill v. United States, 368 U.S. 424, 426 (1962) (quoting 28 U.S.C. § 2255)).  The motion may be based "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 para. 1.  It should be noted, however, that the remedy afforded by § 2255 "does not encompass all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979).  "[U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack [is] . . . limited." Id. More specifically, "an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice,'" and an error of fact does not provide a basis for a collateral attack unless "the errors were of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." Id. at 185-86 (citations omitted).

Section 2255 is not a substitute for a direct appeal. See, e.g., Addonizio, 442 U.S. at 184. Therefore, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment," id., and "[a] defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence," McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001) (citing Bousley v. United States, 523 U.S. 614, 622 (1998)); see also United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

The movant is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 para. 2; see also United States v. Ledezma-Rodriguez, 423 F.3d 830, 835-36 (8th Cir. 2005); Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).

5

# III.   ANALYSIS

The defendant's § 2255 motion raises fifteen claims: (1) the verdict form failed to distinguish the object of the conspiracy; (2) the defendant was denied the right to jury selection from a cross-section of the community; (3) the jury was biased; (4) inadmissible evidence of the defendant's prior arrest was presented at trial; (5) witnesses were not sequestered as ordered; (6) witnesses were allowed to corroborate their stories; (7) inadmissible evidence concerning firearms and ammunition was presented at trial; (8) the magistrate judge abused his discretion by granting defense counsel's motions for continuances when those motions were not accompanied by affidavits from the defendant; (9) the prosecutor misled the jury; (10) the defendant was the subject of a vindictive prosecution; (11) the trial court erred by failing to dismiss the case for lack of evidence; (12) Mr. Levy provided constitutionally ineffective assistance; (13) Mr. Gooch provided constitutionally ineffective assistance; (14) the cumulative effect of the foregoing errors deprived the defendant of a fair trial; and (15) the United States Court of Appeals for Eighth Circuit concluded improperly that the defendant was guilty of conspiracy.  (See filing 175 at 4-11, 14-28.)[2]  I shall analyze each of the defendant's claims in turn.

Preliminarily, I note that the government submits that claims 1-11 could have been raised on direct appeal, if not earlier.  (See Pl.'s Br., filing 180, at 10.)[3]  The defendant appears to agree. (See filing 175 at 26-27.)  Therefore, I find that claims 1-11 must be dismissed unless the defendant establishes "both cause for the procedural default and actual prejudice resulting from

---

[2]The page numbers appearing on the defendant's motion are inaccurate; the first page of the motion is labeled "Page 2," and the handwritten numbers appearing on later pages do not account for the insertion of an additional page of email text at approximately page 20.  Therefore, my citations to pages of the defendant's motion will be based upon the pages' "actual" numbers, as opposed to the numbers appearing on the faces of those pages.

[3]To be precise, the government submits that claims 1-11 and claim 14 could have been raised "either prior to trial, sentencing, or on direct appeal."  (Pl.'s Br., filing 180, at 10.)  Claim 14 is based on the cumulative effect of claims 1-13, however, and claims 12 and 13 raise allegations of ineffective assistance of counsel.  "[I]neffective-assistance-of-counsel claims typically are best raised in collateral proceedings under 28 U.S.C. § 2255."  United States v. Watkins, 486 F.3d 458, 465 (8th Cir. 2007).  Therefore, to the extent that claim 14 is based upon the combined effect of the defendant's ineffective assistance of counsel claims, I do not agree that claim 14 could have been raised on direct appeal (or earlier).

the error."  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citations omitted).

The defendant argues that Mr. Gooch rendered ineffective assistance by failing to raise claims 1-11 on appeal.  (See filing 175 at 26-27; see also id. at 4-11, 14-21, 24-27.)  It is true that, "[a]bsent unusual circumstances, a showing of ineffective assistance of counsel satisfies both cause and prejudice."  Apfel, 97 F.3d at 1076.  In other words, if the defendant can establish that his Sixth Amendment right to effective counsel has been violated, the procedural default of claims 1-11 might be excused.  "To establish ineffective assistance of counsel within the context of section 2255, however, a movant faces a heavy burden."  Id.

> A claim of ineffective assistance of counsel [under § 2255] must be scrutinized under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  Under Strickland, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case.  The first part of the test is met when the defendant shows that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances."  The second part is met when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. (quoting Cheek v. United States, 858 F.2d 1330, 1336 (8th Cir. 1988) (citations omitted)).  It should be noted that "there is no reason for a court deciding an ineffective-assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.  For example, prejudice cannot be shown if there is no reasonable probability that a claim would have been successful had it been raised by counsel, and under those circumstances there is no need to consider whether counsel's representation was deficient.

With the foregoing standard in mind, I shall proceed to analyze the defendant's claims.

**A.    Claim 1: The Verdict Form "Failed to Distinguish the Object of the Conspiracy"**

The defendant argues first that the "verdict form failed to distinguish the object of the cons[p]iracy" in violation of the Fifth, Sixth, and Fourteenth Amendments.  (See filing 175 at 4.)  More specifically, he argues,

7

> Judge Urbom says "In order to return a verdict of guilty, you must unanimously agree upon which of the crimes was the subject of the conspiracy. If you cannot agree in that manner, you must find the defendant not guilty." And then . . . Judge Urbom read the verdict, "We, the jury, find the defendant: A, on the charge of conspiracy, guilty; e[tc."] They did not name the subject of the conspiracy as per instructions.

(Filing 175 at 4 (citations omitted).)

The jurors were instructed that they must unanimously agree upon whether the conspiracy involved "the crime of distributing methamphetamine" or "the crime of possessing methamphetamine with the intent to distribute it," assuming that the government did not prove a conspiracy to commit both crimes. (See Trial Transcript (hereinafter Tr.), filing 155, Vol. I, at 7:16-8:2.) However, the jurors were not instructed to write on the verdict form, or otherwise identify, the name of the crime (or crimes) that they found to be the subject of the conspiracy. This was not erroneous.

An indictment may allege that the defendant committed an offense (in this case, conspiracy) "by one or more specified means." Fed. R. Crim. P. 7(c). See also, e.g., Griffin v. United States, 502 U.S. 46, 47 (1991) (describing an unlawful conspiracy that was alleged to have two subjects). A general verdict[4] on such a charge is "valid so long as it was legally supportable on one of the submitted grounds." Griffin, 502 U.S. at 49. See also id. at 56-57 ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." (quoting Turner v. United States, 396 U.S. 398, 420 (1970))).[5] In short, the law does not support

---

[4]A general verdict is a "verdict whereby the jury find either for the plaintiff or for the defendant in general terms." Black's Law Dictionary 1399 (5th ed. 1979).

[5]There is an exception to this rule in cases "where a provision of the Constitution forbids conviction on a particular ground" and a general verdict may have rested on that ground. Griffin, 502 U.S. at 53 (discussing Stromberg v. California, 283 U.S. 359 (1931)). The defendant has made no argument that either of the possible bases of conviction was unconstitutional, and I find that this exception does not apply. Although the defendant does argue that the evidence was insufficient to support the verdict–an argument that will be addressed separately below in Part III.K–the Supreme Court has specifically rejected the notion that a general verdict must be set aside because one of the possible bases of conviction was "merely unsupported by sufficient evidence." Griffin, 502 U.S. at 56.

the defendant's argument that the jury's verdict is invalid simply because it does not specify the name of the crime or crimes that were the subject of the charged conspiracy.

Because the verdict form was not erroneous, there is no reasonable probability that claim 1 would have been successful if it had been raised by counsel. Thus, the defendant has failed to demonstrate that he was prejudiced by counsel's failure to raise this argument on direct appeal. This means, in turn, that the defendant cannot overcome the procedural default of claim 1, and the claim must be dismissed.

### B.   Claim 2: The Jury Was Not Selected from a Cross Section of the Community

The defendant argues next that his right to a jury chosen from a cross section of the community was violated. This argument is without merit.

"A defendant is entitled to an 'impartial jury drawn from a fair cross section of the community.'" United States v. Thompson, 450 F.3d 840, 843 (8th Cir. 2006) (quoting Taylor v. Louisiana, 419 U.S. 522, 536 (1975)). To establish a violation of this right, a defendant must show "that the allegedly excluded group is distinctive and underrepresented on juries due to systematic exclusion." Id. (citing Duren v. Missouri, 439 U.S. 357, 364 (1979)). In support of his argument that his jury was not drawn from a fair cross section of the community, the defendant states, "The jury pool was all white. Lincoln[,] Nebraska's population is not all white. There should have been a certain percent of other races to choose from." (Filing 175 at 5.) These allegations are legally insufficient to establish the systematic exclusion of allegedly underrepresented groups. See, e.g., United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998) ("Ethnic and racial disparities between the general population and jury pools . . . cannot [by themselves] establish the 'systematic exclusion' of allegedly under-represented groups.").

The defendant has not alleged facts that are sufficient to support a claim that any racial or ethnic group is systematically excluded from jury service in the United States District Court for the District of Nebraska. Had the defendant raised this claim on direct appeal, there is no reasonable probability that it would have been successful. Therefore, because the defendant has failed to demonstrate the "prejudice" component of an ineffective assistance of counsel claim, Claim 2 must be dismissed.

### C.    Claim 3: The Jury Was Biased

The defendant argues that the jury was biased, stating,

> Several members of the jury said they would have a problem with the defendant not testifying.  Judge Urbom asked them if they could put those feelings aside.  They said yes.  They stated their feelings [and] they should have been disqualified.  Especially after the prosecutor[']s rebuttal and the judge's curative comments, those feelings were reinforced.  Please see Trial Transcript Vol. V page 798:17-23 at line 18 Judge Urbom says, "reguarding [sic] the defendant[']s failure to testify."  I did not fail anything.

(Filing 175 at 7.)

"The Sixth Amendment guarantees the right to trial 'by an impartial jury.'"  United States v. Gianakos, 415 F.3d 912, 922 (8th Cir. 2005).  Impartiality is presumed "so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case."  Id. (quoting United States v. Evans, 272 F.3d 1068, 1078 (8th Cir. 2001)).  "Although removal of a juror is appropriate if 'a juror has formed an opinion as to the issue to be tried,' '[i]t is sufficient if the juror can lay aside his [pretrial] impression or opinion and render a verdict based on the evidence presented in court.'"  Evans, 272 F.3d at 1078-79 (citations omitted).  Conversely, "[w]hen a juror is unable to state that she will serve fairly and impartially despite being asked repeatedly for such assurances, we can have no confidence that the juror will 'lay aside' her biases or her prejudicial personal experiences and render a fair and impartial verdict."  Id. at 1079 (quoting Thompson v. Altheimer & Gray, 248 F.3d 621, 627 (7th Cir. 2001)).  Here, according to the defendant, the jurors stated that they were able to put aside any feelings about the defendant's decision not to testify.  Under these circumstances, there is no reasonable probability that claim 3 would have been successful had it been raised on direct appeal.  See United States v. Blom, 242 F.3d 799, 805-06 (8th Cir. 2001) ("[W]e will not overturn the district court's finding that a prospective juror can put aside any pretrial opinion and render a verdict based upon the evidence at trial 'unless the error is manifest.'" (quoting United States v. McNally, 485 F.2d 398, 403 (8th Cir. 1973)).

I note in passing that the defendant suggests that I biased the jury by commenting on his "failure to testify."  (See filing 175 at 7.)  Specifically, the defendant complains about the following comment, which was made by me to the jury after closing arguments had been

10

completed:

> Secondly, I want to remind you of the instruction regarding the
> Defendant's Failure to Testify in which I said in the Final Jury Instructions:
> Because the defendant is not required to prove his innocense, the defendant's
> decision to exercise his constitutional right not to testify cannot be considered by
> you or discussed among you in arriving at your verdict.

(Tr., filing 159, Vol V, at 798:17-23.)  I reject the defendant's suggestion that this statement
biased the jury by disparaging his "failure" to testify.

The defendant cannot show that counsel's failure to raise claim 3 on direct appeal
amounted to constitutionally ineffective assistance, and therefore the claim must be dismissed.

### D.    Claim 4: Inadmissible Evidence of the Defendant's Prior Arrest Was Presented at Trial

The defendant argues next that evidence was introduced at trial in violation of my order
granting his motion to suppress evidence.  (See filing 175 at 8 (citing filing 64).)

The defendant, through Mr. Gooch, filed a motion "to suppress the evidence obtained
from a warrantless search of Defendant's person on June 13, 2003, . . . by an officer of the
Lincoln, Nebraska Police Department."  (Filing 48 at 1.)  Ultimately, this motion was granted,
and two plastic baggies containing methamphetamine, one baggie containing a prescription pill,
and cash were suppressed.  (See generally filing 64.)  The defendant does not argue that any of
the suppressed evidence was physically offered or received at trial; instead, he argues that the
following testimony violates the order granting his motion to suppress:

> Q.    Did you have any dealings with the defendant after that?
> A.    No, at that time he - - that's when he kind of separated, a lot of people
>       were separating at that time because people were getting busted then and
>       Tim had just gotten pulled over not too long after that I believe for
>       possession - - or he had possession and I don't know exactly what became
>       of that, but he told me that he had gotten caught with two balls and - - two
>       eight-balls in his possession and after that it really kind of slowed down.
>       No one wants to do any kind of dealings with people that are being - - you
>       know, have gotten busted or anything like that, so . . . .

(Tr., filing 156, Vol. II, at 202:9-19.)

The defendant claims that this testimony refers to the encounter between the defendant
and police on June 13, 2003, and I take it that he believes that the term "two eight-balls" refers to
the two baggies of methamphetamine that were suppressed pursuant to my order of July 30,

2004.  He argues that "[d]efense counsel should have objected and ask[ed] for a mistrial" after the jury heard this testimony.  (Filing 175 at 8.)  In response, the government argues that "nothing in [this witness's] testimony relates to anything that was ordered suppressed."  (Pl.'s Br., filing 180, at 16.)

I have studied the trial transcript carefully, and it is not clear that the witness was referring to evidence that had been suppressed.  At best, it is merely plausible that the "two eight-balls" mentioned by the witness were the same two baggies of methamphetamine that were seized on June 13, 2003.  (See Tr., filing 156, Vol. II, at 185:10-11 (indicating that the witness was arrested in July 2003); id. at 202:9-25 (indicating that the witness was indicted soon after the defendant was caught with two eight-balls in his possession).)  No follow-up questions were asked to draw out additional testimony about the "two eight-balls"; the matter was dropped.

It seems to me that, had defense counsel objected to the witness's testimony on the ground that it referred to suppressed evidence, it is unlikely that the objection would have been sustained.  Under the circumstances, and especially given the ambiguities surrounding the witness's testimony, I think it likely that a reasonably competent defense attorney would have held his objection until further testimony revealed that these "two eight-balls" were likely the same baggies of methamphetamine that had been suppressed.  Because no such additional testimony was presented, I find that defense counsel's decision not to object to the witness's testimony represents a reasonable strategic choice, and it did not fall "outside the wide range of professionally competent assistance."  Strickland v. Washington, 466 U.S. 668, 690 (1984).

In summary, the record demonstrates that defense counsel did not perform deficiently when he chose not to object to ambiguous testimony about the defendant being "caught" with "two eight-balls."  Nor is there is a reasonable probability that the result of the proceeding would have been different had an objection been raised at trial.  In addition, I find that there is no reasonable probability that the defendant was prejudiced by counsel's failure to raise claim 4 on appeal.  Because the defendant cannot show that counsel's failure to object to the foregoing testimony amounted to ineffective assistance of counsel, claim 4 must be dismissed.

### E.    Claim 5: Witnesses Were Not Sequestered

The defendant argues that witnesses were not sequestered as required by my order of May

9, 2005.  (See filing 175 at 14.  See also filing 100.)  Specifically, he states,

> The witnesses were to be sequestered, however Officer Benjamin Faz sat at the prosecutors table thru-out the whole trial.  And was then allowed to testify after hearing everyone's testimonies. . . .  Defense counsel should have objected to Faz's presence in the court room.  When Faz took the stand Judge Urbom should have disqualified him as a witness.

(Filing 175 at 14.)

"Federal Rule of Evidence 615 provides that witnesses may be excluded from hearing the testimony of other witnesses."  United States v. Riddle, 193 F.3d 995, 997 (8th Cir. 1999) (citing United States v. Sykes, 977 F.2d 1242, 1245 (8th Cir. 1992)).  There are exceptions to this rule, however, and one of these exceptions "has been interpreted to allow government case agents to sit at counsel table throughout the trial."  Id. (citations omitted).  A government case agent may be a federal, state, or, as in this case, a local law enforcement officer.  See United States v. Jones, 687 F.2d 1265, 1268 (8th Cir. 1982).  Moreover, it is within the trial court's discretion to allow a government case agent to testify as a witness at trial, even if the agent sits at the counsel table throughout the trial.  Sykes, 977 F.2d at 1245 (citing United States v. Williams, 604 F.2d 1102, 1115 (8th Cir. 1979)).  In order to establish that the trial court abused its discretion, a defendant must show prejudice.  See Riddle, 193 F.3d at 997 (citing Sykes, 977 F.2d at 1245).

The government represents that Officer Faz was designated as its case agent.  (See Pl.'s Br., filing 180, at 17.)  As such, he was exempt from the sequestration order.  In addition, I note that the defendant has not claimed that Officer Faz tailored his testimony to match that of prior witnesses; instead, he merely objects to the fact that Officer Faz was allowed to testify after he heard the testimony of prior witnesses.  Thus, there is no indication that the defendant suffered prejudice.  Under the circumstances, I find that if defense counsel had raised objections to Officer Faz's presence in the courtroom or to his testimony, those objections would have been denied.  Put differently, there is no reasonable probability that the result of the proceeding would have been different if defense counsel had argued that Officer Faz's presence during trial or his testimony violated the sequestration order.  Because the defendant cannot show that counsel's failure to make these objections amounted to ineffective assistance, claim 5 must be dismissed.

###### F.   Claim 6: Witnesses Were Allowed to "Corroborate" Their Testimony

The defendant claims that "[w]itnesses [were] allowed to corroborate their stories" in violation of the Fifth, Sixth, and Fourteenth Amendments.  In support of this argument, the defendant states,

> Prisoners are kept in the same cell while awaiting their turn to testify, and then brought back to the same cell when they are done.  I've been there while other trial[s] were going on and that's how it's done.  Also see Trial transcript Vol. IV page 607:5-11.  Angie Baacke admits talking to her husband Samuel Baacke about how it was for him.

(Filing 175 at 14-15.)

With the exception of Officer Faz, (see supra Part III.E), there is no indication that any witness was permitted to be in the courtroom while any other witness was testifying.  Furthermore, there is no indication that any witness discussed his or her testimony with any other witness while waiting in the cell described by the defendant.  Indeed, the defendant does not claim that any particular witness in this case was held in this cell at the same time as any other witness; his argument appears to be based upon his personal experience during "other trials."  In short, his claim that witnesses were "allowed to corroborate their stories" while being detained in a holding cell is based entirely on speculation.  Counsel's refusal to raise such a claim does not amount to ineffective assistance.

The defendant also cites the trial testimony of Angela Baacke in support of his argument that witnesses were allowed to corroborate one another's testimony.  (See filing 175 at 15 (citing Tr., filing 158, Vol IV, at 607:5-11).)  The relevant portion of Ms. Baacke's testimony may be fairly summarized as follows.  Ms. Baacke said that she knew that her husband had testified during the trial because she spoke with him on the telephone.  (See Tr., filing 158, Vol. IV, at 607:20-24.)  She said that she asked him "if he felt okay about" his testimony, and she said that they did not talk "about the content [of his testimony], but about the experience."  (See id. at 607:11-15.)  She added that she did not talk to her husband about any of the questions that were asked at trial.  (See id. at 607:16-21.)  Finally, she said that she was aware of the sequestration order, but she did not think that the order prohibited her from talking to her husband about all things.  (See id. at 607:22-608:9.)  Rather, she felt that the order meant that she could not talk to

14

her husband about the content of the trial.  (See id. at 608:9-14.)  Ms. Baacke's testimony does not establish that witnesses modified their testimony to match that of other witnesses.

Counsel's failure to raise claim 6 on direct review does not amount to ineffective assistance because there is no reasonable probability that, had counsel pursued claim 6, the result of the case would have been different.  Claim 6 will therefore be dismissed.

### G.   Claim 7: Inadmissible Evidence Concerning Firearms and Ammunition Was Presented at Trial

The defendant argues next that inadmissible evidence was introduced at trial in violation of the Fifth and Sixth Amendments.  (See filing 175 at 15.)  He states,

> Please see Judge Urbom[']s Memorandum and order on defendant[']s motion to strike.  Number 103 on the docket sheet, filed on May 16, 2005.  On page 4 Judge Urbom says in the last sentence of the first paragraph, "However, as I shall explain, the answer to the question posed by Justice Breyer is 'no' and the 'further factual findings' shall neither appear in the indictment nor be presented to the jury at trial."  Also see page 7 footnote # 3, "Indeed, I find that it is not appropriate to submit these enhancements to the jury at all."  The motion was granted to this extent: "further factual findings" alleged in the second superseding indictment, filing 66, will be stricken.  Number 3 of the "further factual findings["] is did possess a dangerous weapon including firearms.  Therefore there should have been no testimonies about guns or ammo.  Yet guns were brought up repeatedly. . . .  Defense counsel should have objected to this.

(Filing 175 at 15-16 (citations omitted).)  I take the defendant's argument to be that because the "Further Factual Finding" section of the second superseding indictment was stricken pursuant to my order of May 16, 2005, and because firearms and ammunition were mentioned in that section, no evidence of firearms and ammunition should have been admitted at trial.

The defendant's argument is based on a misreading of the Memorandum and Order on Defendant's Motion To Strike, (filing 103), which resolved the defendant's motion to strike the "Further Factual Finding" paragraph of the second superseding indictment, (see filing 88).  The "Further Factual Finding" paragraph was added to the second superseding indictment because the government believed that under Blakely v. Washington, 542 U.S. 296 (2004), sentencing factors would have to be proved to a jury beyond a reasonable doubt.  (See filing 103 at 4.)  I found that the "Further Factual Finding" paragraph should be stricken, stating, "courts are not limited to sentencing defendants based upon conduct that the government chooses to charge in an

indictment." (<u>Id.</u> at 7.)  In addition, I rejected "the defendant's argument that the sentence enhancements set forth in the 'Further Factual Finding' section of the Indictment must be proved to the jury beyond a reasonable doubt," and I explained that "I [would] make findings concerning these enhancements." (<u>Id.</u>)  I also stated that "the 'Further Factual Findings' shall neither appear in the indictment nor be presented to the jury at trial," and that "it is not appropriate to submit these enhancements to the jury at all." (<u>Id.</u> at 4, 7 n.3.)  The defendant takes these latter statements to mean that no evidence about firearms and ammunition would be admitted into evidence at trial.  Read in context, however, the statements clearly refer to the fact that the jury would not be asked to find, beyond a reasonable doubt, whether the government proved the sentencing factors listed in the "Further Factual Finding" section of the second superseding indictment.  The Memorandum and Order on Defendant's Motion to Strike simply did not bar the government from introducing evidence about firearms or ammunition at trial.

There is no reasonable probability that, had counsel objected to evidence of firearms or ammunition on the ground that such evidence had been barred pursuant to the Memorandum and Order on Defendant's Motion to Strike, the result of the case would have been different.  Thus, counsel's failure to make such an objection does not amount to constitutionally ineffective assistance, and claim 7 will be dismissed.

### H.   Claim 8: The Magistrate Judge Abused His Discretion by Granting Defense Counsel's Motions

The defendant argues that the magistrate judge abused his discretion by granting Mr. Levy's motion for a continuance on October 2, 2003, and by granting Mr. Levy's motion for a competency evaluation on October 6, 2003.  (<u>See</u> filing 175 at 16-17.  <u>See also</u> filings 11, 13.)  For the following reasons, I find that these arguments cannot provide a basis for relief under § 2255.

The Eighth Circuit has considered the defendant's argument that "the magistrate judge . . . lacked 'reasonable cause' to order the competency examination." <u>United States v. DeGarmo</u>, 450 F.3d 360, 363 (8th Cir. 2006).  This argument cannot be relitigated in a § 2255 motion.  <u>See, e.g.</u>, <u>United States v. Davis</u>, 406 F.3d 505, 511 (8th Cir. 2005) (citing <u>Dall v. United States</u>, 957 F.2d 571, 572 (8th Cir. 1992)).  Therefore, the defendant's claim that the magistrate judge

16

"abused his discretion" by granting the motion for a competency examination must be dismissed.

The defendant also claims that Mr. Levy filed a motion for a continuance on September 24, 2003, "without defendant's permission or knowledge," and that the magistrate judge erred by granting this motion on October 2, 2003, without requiring Mr. Levy to file a "written affidavit of the defendant." (See filing 175 at 17; see also Progression Order, filing 5, ¶ 9.) Even if these facts are true,[6] however, and even if I assume that the defendant's argument was not addressed on direct review, the defendant must also show that counsel's failure to raise an objection to the magistrate judge's order on direct review amounted to ineffective assistance of counsel. The defendant cannot make this showing because the record clearly establishes that the magistrate judge's order caused the defendant to suffer no prejudice. Indeed, the delay attributable to the continuance ordered on October 2, 2003, was not excluded from the calculation of elapsed time under the Speedy Trial Act, (see filing 52 at 6-7 (counting the days between the October 2, 2003, order and the defendant's October 5, 2003, motion in the Speedy Trial Act calculation)), and the Eighth Circuit has already considered and rejected the defendant's claim that the time allotted under the Speedy Trial Act expired before he was brought to trial, see United States v. DeGarmo, 450 F.3d 360, 363-64 (8th Cir. 2006) (finding that "only 57 non-excludable days ran between DeGarmo's first appearance and the commencement of his trial," and that "[t]his is well-within the 70 days allotted by the STA"). Thus, there is no reasonable probability that the result of the proceeding would have been different if counsel had objected to the magistrate judge's order of October 2, 2003. Claim 8 must be dismissed.

## I. Claim 9: The Prosecutor Misled the Jury

Next, the defendant argues that the prosecutor misled the jury by making the following statement during his closing argument: "And I suggest to you the way you eliminate a dealer is convict him of the crime of conspiracy and put that person in prison. That's one way to get - - to eliminate it." (See filing 175 at 18 (quoting Tr., filing 159, Vol. V, at 791:10-12).) The

---

[6]To be precise, Mr. Levy did not move for a continuance on September 24, 2003. (See filing 10.) Rather, he filed a motion requesting "an enlargement of time until October 14, 2003, to file his out-of-time motion to suppress." (Id.) In granting this motion, the magistrate judge stated that the "[t]rial of this matter is continued until further order." (Filing 11.)

defendant claims that this statement "[gives] the jury permission to find me guilty of something I'm not charged with."  (Id.)  He adds, "If the evidence is to be believed, the only thing he proved was that I was a dealer.  There was no testimony that I was involved in a conspiracy.  But he's saying it's ok to convict me of conspiracy because I was a dealer.  That's not what the law says." (Id.)

The defendant's argument is without merit.  Although it is true that a conspiracy requires "a concrete, interlocked interest beyond the consummation of the individual buy-sell deals themselves," United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003), the prosecutor did not argue that individual buy-sell deals, without more, would support a conspiracy conviction.  On the contrary, shortly before he suggested that a "dealer" could be convicted of the crime of conspiracy, the prosecutor argued at length that the evidence revealed the existence of more than mere buyer-seller arrangements involving the defendant.  (See Tr., filing 159, Vol. V, at 785:24-788:2.)  See also United States v. Ramirez, 350 F.3d 780, 784-85 (8th Cir. 2003) (citing factors that distinguish between a conspiracy "and a mere buyer-seller relationship").  Furthermore, the defendant's claim that "[t]here was no testimony that [he] was involved in a conspiracy" is contradicted by the record.  (See infra Part III.K.)  There is no reasonable probability that the result of the proceeding would have been different had counsel objected to the prosecutor's statement at trial or on appeal.  Claim 9 will be dismissed.

### J.   Claim 10: Vindictive Prosecution

The defendant claims next that he was a victim of prosecutorial vindictiveness.  (See filing 175 at 19-21.)

"Although the government may take action to punish a defendant for committing a crime, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness."  United States v. Campbell, 410 F.3d 456, 461 (8th Cir. 2005) (citing United States v. Goodwin, 457 U.S. 368, 372 (1982)).  "A defendant can establish prosecutorial vindictiveness through objective evidence that the prosecutor's decision to seek a more severe sentence was intended to punish the defendant for the exercise of a legal right."  Id. (citing United States v. Rogers, 18 F.3d 1425, 1429 (8th Cir. 1994)).  "Alternatively, the defendant is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of

18

vindictiveness, which may arise when prosecutors increase the number or severity of charges." Id. (citing Rogers, 18 F.3d at 1429).  See also Goodwin, 457 U.S. at 381-84 (declining to apply a presumption of vindictiveness in a case involving a pretrial decision to modify charges).  "It is the defendant's burden to show that the prosecution was brought in order to punish the defendant for the exercise of a legal right," Campbell, 410 F.3d at 461 (citations omitted), and the burden is "especially heavy" when the prosecutor's allegedly vindictive acts occurred prior to trial, United States v. Pruett, No. 06-3500, 2007 WL 2492582, at *6 (8th Cir. Sept. 6, 2007) (citing Goodwin, 457 U.S. at 381-82).

To support his prosecutorial vindictiveness claim, the defendant has attached to his motion a document that appears to contain the text of two emails that were sent by the prosecutor to Mr. Gooch in July 2004.[7]  The first of these emails, which is dated July 20, 2004, states,

> Mike: Because of Blakely it is imperative for me to know if this thing is going to be settled or your best guess as push has now become shove.  If not I must do a superseding to include all the enhancements that may involve this case, i.e., guns, ammo, leadership roles, career criminal which I also need to put in and then file an information, etc.  I must also begin to get my witnesses lined up.  The big deal for Degarmo is once I do the superseding it all becomes written in stone and can no longer be negotiated and all this stuff, as I understand, can go before the jury unless he waives it which I assume he won[']t.  I want to give you one last chance re notice of what I must do and I must do it by thursday of this week but I am sworn to secrecy so I can[']t tell you the reason for the thursday deadline.  Please let me know asap.

(Filing 175 at 20.)

The second email, which is dated July 28, 2004, states, in part, as follows.

> Mike: I am forwarding my message to you of July 20th cause I don[']t think you answered it and that is what I what I wanted to talk with you about.  I really don[']t give a shit re trying to settle this case and in fact I think I now want to convict him of everything I can so he gets the most time he can get as he has been f–ing me around big time and that, and as you also know, that is about the only thing that could ever make this personal.

(Id.)  The defendant claims that he has "done nothing to [the prosecutor] except invoke [the] fifth amendment right to go to trial," and he argues that shortly after the date of these emails, the

---

[7]I note in passing that the government does not dispute the authenticity of this document and concedes that it "may contain inappropriate language."  (See Pl.'s Br., filing 180, at 22.)

prosecutor filed a second superseding indictment and conducted an interview with the witnesses "where they all decided to put guns and more dope on me." (Id. at 19.)  I take the defendant's argument to be that the "vindictiveness" reflected in the email of July 28, 2004, manifested itself in the government's charging decisions and in its investigation of the case.

I find that the email of July 28, 2004, is the sort of objective evidence that can support a claim of prosecutorial vindictiveness.  See United States v. Goodwin, 457 U.S. 368, 384 (1982) ("[W]e of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do."); United States v. Campbell, 410 F.3d 456, 462 (8th Cir. 2005) ("An example of objective evidence of a vindictive motive would be a prosecutor's statement that he or she is bringing a new charge in order to dissuade the defendant from exercising his or her legal rights.").  The email states, on its face, that the prosecutor wanted to convict the defendant of "everything [he] can" and make the defendant's sentence as long as possible because the defendant has been "f–ing [the prosecutor] around."  It also states that the "f-ing" the prosecutor around is "about the only thing that could" make the case  "personal" to the prosecutor.  Furthermore, there is no evidence–and the government has not argued–that the defendant did anything more than exercise his right to proceed to trial.  In short, the email is objective evidence that the prosecutor wanted to seek a more severe sentence in order to punish the defendant for exercising a legal right.  Campbell, 410 F.3d at 461.

In response to the defendant's motion, the government argues that, despite the "inappropriate language" contained within the prosecutor's email of July 28, 2004, the defendant cannot establish that the second superseding indictment was filed in order to punish the defendant for exercising a valid legal right.  (See filing 180 at 22.)  The government may well be correct.  Although a pretrial decision to modify charges against a defendant can give rise to a claim of prosecutorial vindictiveness, see Goodwin, 457 U.S. at 384; Campbell, 410 F.3d at 462, the record seems to show that the charges against the defendant were actually reduced after the prosecutor sent the email dated July 28, 2004.[8]  However, the government has not responded to

_____

[8]A superseding indictment filed on March 17, 2004, was operative when the prosecutor sent his July 2004 emails to Mr. Gooch.  (See filing 43.)  The March 17 indictment charged the

the defendant's claim that the prosecutor took steps to "put guns and more dope on [the defendant]" out of vindictiveness. Thus, the merits of the defendant's prosecutorial vindictiveness claim remain to be resolved at a later time.

In summary, it seems to me that the defendant has submitted objective evidence that could be interpreted as showing the prosecutor's decision to seek a more severe sentence to punish the defendant for the exercise of a legal right, which is sufficient to raise a claim of prosecutorial vindictiveness. <u>United States v. Campbell</u>, 410 F.3d 456, 461 (8th Cir. 2005)

---

defendant with conspiring to distribute and to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 836 (Count I), and charged that the following property was subject to forfeiture under 21 U.S.C. § 853: 1) $2,350 seized by the Lincoln Police Department on June 14, 2003; and 2) $500 seized by the Lincoln Police Department on July 26, 2003 (Count II). (<u>See</u> filing 43.) On August 19, 2004, the government filed a second superseding indictment. (<u>See</u> filing 66.) The August 19 indictment differed from the March 17 indictment in two respects. First, the charge that $2,350 was subject to forfeiture under § 853 was dropped from the August 19 indictment. (<u>Compare</u> filing 43 <u>with</u> filing 66.) Second, the aforementioned "Further Factual Finding" paragraph was added to the August 19 indictment. (<u>Compare</u> filing 43 <u>with</u> filing 66; <u>see also</u> <u>supra</u> Parts I, III.G.) The conspiracy charge set forth in Count I of the August 19 indictment is identical to the conspiracy charge set forth in Count I of the March 17 indictment. (<u>Compare</u> filing 43 <u>with</u> filing 66.)

On November 10, 2004, the defendant moved to strike the "Further Factual Finding" paragraph from the August 19 indictment. (<u>See</u> filing 88.) The government opposed this motion initially, arguing that the paragraph was necessary under <u>Blakely</u>. (<u>See</u> filing 92.) In a brief that was submitted to me on May 13, 2005, however, the government argued that the "Further Factual Finding" paragraph should indeed be stricken. On May 16, 2005, I granted the defendant's motion to strike the "Further Factual Finding" section of the indictment. (<u>See</u> filing 103.) Also on May 16, 2005, Count II of the August 19 indictment was dismissed on the government's motion. (<u>See</u> filing 104.)

In short, the second superseding indictment, which was filed approximately three weeks after the prosecutor's email of July 28, 2004, included a count that was identical to Count I of the prior indictment; a second count that–before it was dismissed on the government's motion–was already less severe than the charge set forth in Count II of the prior indictment; and a "Further Factual Finding" paragraph that was ultimately stricken as surplusage. Under the circumstances, and despite the prosecutor's vindictive language, it is difficult to see how "<u>the prosecutor's charging decision</u>" was infected with vindictiveness. <u>United States v. Goodwin</u>, 457 U.S. 368, 384 (1982) (emphasis added).

(citing United States v. Rogers, 18 F.3d 1425, 1429 (8th Cir. 1994)).  At this time, I cannot say

that there is no reasonable probability that the defendant's claim would have been successful had

counsel raised it on direct review, and I find that the defendant is entitled to an evidentiary

hearing on the claim.  See 28 U.S.C. § 2255 para. 2 ("Unless the motion and the files and records

of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a

prompt hearing thereon . . . .").  Claim 10 will not be dismissed.

### K.    Claim 11: The Evidence Was Insufficient to Support the Defendant's Conviction

The defendant argues,

> At the end of the prosecutor[']s case defense counsel moved to dismiss the
> case for lack of evidence.  Judge Urbom should have dismissed the case.  There
> was not one bit of evidence of a conspiracy.  Only buyer, seller.  None of the
> elements of conspiracy were proven.  Defense counsel ask[ed] also every witness
> if Tim DeGarmo was in [their] conspiracy, and they all said no.

(Filing 175 at 21.)  The defendant cannot show, however, that defense counsel's failure to press

this argument on appeal amounted to constitutionally ineffective assistance.

The defendant was charged with conspiring to distribute and to possess with the intent to

distribute methamphetamine in violation of 21 U.S.C. § 846.  (See Second Superseding

Indictment, filing 66.)  Although the charge is worded in the conjunctive, the underlying offense

statute, 21 U.S.C. § 841(a), is worded in the disjunctive.  Under these circumstances, "[p]roof of

any one of the violations charged conjunctively in the indictment will sustain a conviction."

United States v. McGinnis, 783 F.3d 755, 757 (8th Cir. 1986).  See also, e.g., United States v.

Urkevich, 408 F.3d 1031, 1036 (8th Cir. 2005).

"To support a conspiracy conviction, the government must show that: a conspiracy

existed for an illegal purpose; the defendant knew of the conspiracy; and the defendant knowing

joined in it."  United States v. Oleson, 310 F.3d 1085, 1089 (8th Cir. 2002) (citing United States

v. Maynie, 257 F.3d 908, 916 (8th Cir. 2001)).  "There must be evidence that the defendant

entered into an agreement with at least one other person," United States v. Ramirez, 350 F.3d

780, 783 (8th Cir. 2003) (citing United States v. Robinson, 217 F.3d 560, 564 (8th Cir. 2000)),

though this agreement may be "a tacit or implicit understanding rather than an explicit or express

agreement," United States v. Munoz, 324 F.3d 987, 990 (8th Cir. 2003).  There also must be

evidence that the conspirators "exhibited 'some element of cooperation beyond mere knowledge of the existence of the conspiracy.'" Munoz, 324 F.3d at 991 (quoting United States v. Crossland, 301 F.3d 907, 913 (8th Cir. 2002)). "The conspiracy may be proved through circumstantial evidence and may be implied by the surrounding circumstances or by inference from the actions of the parties." Ramirez, 305 F.3d at 783 (citing United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003)). In cases involving drug trafficking, however, the evidence must "point[] in the direction of a concrete, interlocked interest beyond the consummation of the individual buy-sell deals." Munoz, 324 F.3d at 991 (quoting United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003)). For example, "[t]o prove the existence of [such] a conspiracy, the government may provide information regarding how long [the conspirators] were associated with each other, their established methods of payment, whether or not their transactions were standardized, and their demonstrated level of mutual trust." Washington, 318 F.3d at 852 (citing United States v. Clay, 37 F.3d 338, 341 (7th Cir. 1994)). "No one factor is dispositive," id., though it should be noted that in the Eighth Circuit, "evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute [drugs]," Ramirez, 350 F.3d at 784 (quoting United States v. Eneff, 79 F.3d 104, 105 (8th Cir. 1996)).

It should be noted too that on appeal, "[t]he standard of review on a sufficiency-of-the-evidence challenge is very strict." Ramirez, 350 F.3d at 783. "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (quoting United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003)). The court will reverse the conviction "only if no reasonable jury could have found the accused guilty beyond a reasonable doubt." Id. (quoting Espino, 317 F.3d at 792).

It is fair to say that the evidence against the defendant was overwhelming. One witness, who testified that he was a user and dealer of methamphetamine, (Tr., filing 155, Vol. I, at 23:10-13), said that the defendant was a source of methamphetamine for him, (id. at 24:5-9), that he had regular dealings with the defendant involving methamphetamine, (id. at 24:11-25:6), and that he would "sometimes" sell the drugs that he obtained from the defendant and another source, (id.

at 25:10-14).  He added that the defendant "fronted" him methamphetamine, stating, "He just would give you some and say to you, you know, go get rid of this or I actually had talked him into it on some occasions that I got it fronted, but I would get it fronted to me, and I would - - I would take it, and then when I had the money, I'd call him."  (Id. at 28:20-24.)  A second witness testified that he and the defendant purchased, sold, and ingested increasing quantities of methamphetamine over time, and at some point one of their mutual sources began to supply them with "potent dope" from California called "liquid gold."  (Id. at 73:17-74:9.)  Their purchases from this source increased from "eight-balls" and ounces to quarter pounds and pounds.  (See id.)  The witness also testified that he and the defendant sold methamphetamine to one another "a lot," that they had a "standard" agreement to sell each other dope when their supplies were exhausted, and that they pooled their money to buy methamphetamine "on a couple of occasions."  (Id. at 74:22-75:10; Tr., filing 156, Vol II, at 130:12-131:12.)  He added that by the end of their dealings, the defendant had given up regular employment and was making money by selling methamphetamine.  (See Tr., filing 155, Vol. I, at 75:11-76:11.)  At one point, the defendant owed $11,000 to a source named "Gil," and Gil fronted the defendant seven ounces of methamphetamine so that he could "mak[e] more money to try to pay Gil back."  (Tr., filing 156, Vol. II, at 88:11-89:15.)

In all, fourteen witnesses testified against the defendant at trial, but I see no need to summarize all of the evidence that they presented.  Clearly, there was evidence that the defendant made several purchases of resale quantities of drugs, established "fronting" arrangements with other dealers over the course of at least one year, and cooperated with another dealer to pool money for large methamphetamine purchases and to keep themselves stocked with the drug.  In short, there is no doubt that the evidence was sufficient to support the jury's verdict.  See United States v. Ramirez, 350 F.3d 780, 784 (8th Cir. 2003); United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003).  See also United States v. Detweiler, 454 F.3d 775, 777 (8th Cir. 2006); United States v. Galaviz-Luna, 416 F.3d 796, 799 (8th Cir. 2005).

There is no reasonable probability that the defendant's argument would have been successful if it had been raised on appeal.  Thus, the defendant cannot show that counsel's failure to pursue a sufficiency-of-the-evidence challenge on appeal amounted to ineffective assistance,

and claim 11 must be dismissed.

### L.   Claim 12: Mr. Levy Provided Constitutionally Ineffective Assistance

The defendant argues that Mr. Levy provided constitutionally ineffective assistance by 1) failing to meet with the defendant before the arraignment; 2) failing to seek bail for the defendant; 3) failing "to communicate with [the] defendant and keep him advised of his options"; 4) failing to subject the prosecution's case to meaningful adversarial testing; and 5) failing "to obtain the proper waiver form from the defendant stating he knowingly, intelligently, and voluntarily g[a]ve up his rights."  (Filing 175 at 21-23.)

As noted above, "in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case."  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting Cheek v. United States, 858 F.2d 1330, 1336 (8th Cir. 1988)).  With this standard in mind, I shall review each of the defendant's arguments that Mr. Levy provided ineffective assistance.

1.   Failing to Meet with the Defendant Prior to the Arraignment

The defendant argues first that Mr. Levy provided ineffective assistance because he did not meet with the defendant to discuss the case prior to the arraignment.  (See filing 175 at 22.)  He states, "I met Mr. Levy for the first time when I walked into the courtroom for arraignment, court was already in session.  I was told by Mr. Levy to sit down and be quiet."  (Id.)  The defendant does not allege, however, that he was prejudiced by the fact that he did not meet with his attorney prior to the arraignment.  Thus, even if the defendant's allegations were accepted as true, the defendant would not be entitled to relief.  See Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).  The defendant's claim will therefore be dismissed.

2.   Failing to Seek Bail for the Defendant

A detention hearing was held on July 30, 2003, before United States Magistrate Judge David L. Piester.  (See Arraignment Transcript, filing 150, at 4-6.)  During the hearing, the magistrate judge asked counsel whether there was anything in the Pretrial Services report that was "inaccurate or should be disregarded."  (Id. at 5.)  Mr. Levy replied,

> Just going over it with Mr. DeGarmo, he felt that he's only got one escape

25

charge and I see that there are two escape charges as shown in, one in '68 and one in '70.  Those could be the same ones.  But in any event, there's at least one.

(Id.)  The magistrate judge stated that he would consider the information in the report, and he asked whether there was additional evidence that he should consider.  (See id.)  The prosecutor and defense counsel each replied that there was no additional evidence.  The magistrate judge then stated that he would hear counsel's comments.  The government argued,

> Your Honor, I think the report is pretty explicit in terms of the - - not appearing.  And also with the danger to the community based on the trial and convictions and the type of convictions.  I notice it doesn't say anything in here about his use of drugs, but that is always a risk also.  Based on all those facts, we would recommend that he remain in detention and be detained for a period of time, at least at the present time.

(Id. at 5-6.)  Mr. Levy replied, "Judge, at this time I'll merely submit the matter on the Pretrial Services report."  (Id. at 6.)  The magistrate judge stated,

> All right.  Mr. DeGarmo, I'm going to enter a . . . detention order in the case.  It's apparent to me that you've had difficulty in the past abiding by probationary or other conditional releases and your record establishes that if released you pose a threat to the safety of the community.  So I'm going to enter a detention order.  You will have access to Mr. Levy by mail, or personal visit, or telephone call, depending on where the marshals hold you.  And if at some time in the future there is a proposal for your release, then I will consider that proposal.  And if we need to have an additional evidentiary hearing at that time, then we will.

(Id.)

Motions for release were filed by Mr. Levy on January 1, 2004, and by Mr. Gooch on February 26, 2004.  (See filings 20, 33.)  These motions were denied on February 27, 2004.  (See filing 36.)  In addition, a motion to reconsider the denial of these motions was filed on March 8, 2004, and denied on March 16, 2004.  (See filing 42; see also filing 37.)  The defense moved once again for a review of detention on September 24, 2004, (see filing 75), and this motion was granted on or about November 8, 2004, (see filing 83).

Against this background, the defendant argues that Mr. Levy's failure to request that the defendant be released on bond during the July 20, 2003, detention hearing amounted to constitutionally ineffective assistance of counsel.  (See filing 175 at 22.)  He also claims that Mr. Levy should have asked for a continuance "until he had time to investigate the case."  (Id.)  I

26

find, however, that the filings cited above show conclusively that the defendant's argument lacks merit.  Specifically, there is no reasonable probability that the magistrate judge would have declined to enter a detention order had Mr. Levy argued that the defendant should be released on bond.  Moreover, the fact that a number of motions to review the defendant's detention were denied between July 30, 2003, and September 24, 2004, demonstrates that there is no reasonable probability that the result would have been different if Mr. Levy requested a continuance.  The defendant's claim will be dismissed.

3.      Failing to Communicate with the Defendant

        The defendant argues next that Mr. Levy provided ineffective assistance by failing "to communicate with defendant and keep him advised of his options."  (Filing 175 at 22.)  More specifically, he objects to the "continuance" sought by Mr. Levy on September 24, 2003, and to Mr. Levy's motion for a competency evaluation on October 5, 2003.  (See id. at 22-23.)  The defendant's argument is nothing more than a re-framing of claim 8.  (See supra Part III.H (addressing the defendant's argument that the magistrate judge abused his discretion by granting Mr. Levy's motion for a continuance and motion for a competency hearing).)   It has already been established that the granting of these motions did not prejudice the defendant, and it is therefore axiomatic that their filing did not prejudice the defendant.  The defendant's argument will be dismissed.

4.      Failing to Subject the Prosecution's Case to a Meaningful Adversarial Testing

        The defendant argues that "there was no evidence to support an indictment for conspiracy," and that Mr. Levy "should have filed a timely motion to suppress on that issue and moved to dismiss the indictment."  (Filing 175 at 23.)  As I have explained above, the evidence against the defendant was overwhelming.  (See supra Part III.K.)  The defendant's argument is "inherently incredible," Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998), and will be dismissed.

5.      Failing to Obtain a Waiver from the Defendant

        Finally, the defendant argues that Mr. Levy failed "to obtain the proper waiver form from defendant stating he knowingly, intelligently, and voluntarily g[a]ve up his rights."  (Filing 175 at 23.)  He adds, "Defendant refused to sign such a form.  Apparently Mr. Levy waived the

27

defendant[']s rights for him.  Therefore making a mockery of the Constitution and of the meaning of due process."  (Id.)

The defendant does not specify which right or rights were waived by Mr. Levy.  I assume, therefore, that the defendant is referring once again to the rights that were allegedly violated when Mr. Levy filed motions on September 24, 2003, and October 5, 2003.  (Compare filing 175 at 23 with id. at 17-18.)   For the reasons previously stated, (see supra Parts III.H, III.L.3), the defendant's argument will be dismissed.

For the foregoing reasons, I find that the record conclusively establishes that the defendant is entitled to no relief on any of the claims based on the allegedly ineffective assistance provided by Mr. Levy.  Claim 12 will therefore be dismissed in its entirety.

### M.   Claim 13: Mr. Gooch Provided Constitutionally Ineffective Assistance

The defendant argues that Mr. Gooch provided constitutionally ineffective assistance by 1) failing to subject the prosecution's case to a meaningful adversarial testing; 2) failing to make several specific objections during trial; 3) failing to file for a judgment of acquittal; 4) failing to send transcripts to the defendant; and 5) failing to file an "effective" direct appeal.  (Filing 175 at 24-27.)  I shall analyze each of these arguments, bearing in mind the two-part test established in Strickland v. Washington, 466 U.S. 668 (1984).

1.   Failing to Subject the Prosecution's Case to a Meaningful Adversarial Testing

The defendant argues that Mr. Gooch failed "to subject the prosecution[']s case to a meaningful adversarial testing."  (Filing 175 at 24.)  Specifically, he states, "There was no evidence to support an indictment for conspiracy.  This should have been challenged a the suppression hearing or wherever."  (Id.)

Again, the evidence against the defendant was overwhelming, (see supra Part III.K), and the notion that there was no evidence to support a conspiracy is "inherently incredible," Delgado, 162 F.3d at 983.  The defendant's argument will therefore be dismissed.

2.   Failing to Make Specific Objections During Trial

The defendant argues that Mr. Gooch provided ineffective assistance because he failed to make several specific objections during trial.  (See filing 175 at 24-26.)  Many of these objections have been addressed above.  For example, he argues that counsel should have objected to: 1)

testimony that allegedly referred to evidence that had been suppressed (see supra Part III.D); 2) the testimony of Officer Faz (see supra Part III.E); 3) my statement regarding the defendant's "failure to testify" (see supra Part III.C); and 4) all testimony regarding guns and ammunition (see supra Part III.G).  I have studied each of the excerpts of testimony, argument, and instructions that, in the defendant's view, merited an objection, (see filing 175 at 24-26 (citing Tr., filing 155, Vol. I, at 30:22-31:17; filing 156, Vol. II, at 202:9-19, 204:19-25, 205:1-206:20, 209:6-23, 218:4-5; filing 157, Vol. III, at 383:17-25, 385:7-13, 454:4-455:25, 512:19-513:16; filing 158, Vol. IV, at 573:1-574:4, 618:1-667:17; filing 159, Vol. V, at 737:2-10, 737:19-22, 738:18-19, 740:9-15, 742:6-10, 743:10-22, 744:15-20, 745:16-19, 746:6-15, 791:10-12, 798:17-19), and I find that the record conclusively establishes that there is no reasonable probability that, had counsel raised these objections, the result of the proceeding would have been different.  The defendant's argument must therefore be dismissed.

3.      Failing to File for a Judgment of Acquittal

        The defendant argues next that Mr. Gooch provided ineffective assistance because he failed to move for a judgment of acquittal.  (Filing 175 at 26.)  Specifically, he argues that "[t]here was no evidence that there was a conspiracy, no evidence that defendant knew of a conspiracy and no evidence that defendant intentionally joined a conspiracy."  (Id.)  He adds that he told Mr. Gooch "to file everything possible, to skip nothing," but Mr. Gooch "failed to inform defendant" of the option of filing a motion for a judgment of acquittal.  (Id.)

        The defendant's argument is in conflict with claim 11, wherein he argues that defense counsel did move to dismiss the case for lack of evidence.  (See filing 175 at 21.  See also Tr., filing 158, Vol. IV, at 669:5-11.)  Furthermore, as I have noted above, the defendant was not prejudiced by Mr. Gooch's failure to press this argument on appeal.  (See supra Part III.K.)  The defendant's argument will be dismissed.

4.      Failing to Send Transcripts

        The defendant argues that Mr. Gooch provided ineffective assistance because he did not send a copy of the trial transcript to the defendant until "10 weeks after the cert. was denied on defendant's direct appeal."  (Filing 175 at 26.)  He states that he "originally requested the transcripts because of things he heard during trial and things he wanted brought [on] appeal," and

29

"to assist with the direct appeal." (Id.)

The defendant must show, however, that Mr. Gooch's failure to deliver the transcript sooner not only fell below an objective standard of competence, but also prejudiced the defense. E.g., Strickland v. Washington, 466 U.S. 668, 687 (1984). The defendant seems to suggest that counsel's delay frustrated the defendant's ability to review "things" that he heard during trial, and he wanted to raise those "things" on direct appeal. Even if I assume, however, that the defendant was actually prevented from raising "things" on appeal because he lacked a personal copy of the trial transcript, the defendant has not alleged facts suggesting that he suffered prejudice. Indeed, he has not identified a single "thing" that he would have wanted to raise on direct appeal had he been given timely copies of the transcript.[9] Certainly there is no indication that the result of the case would have been different had the defendant obtained a copy of the transcript sooner. In other words, even if the facts alleged by the defendant were accepted as true, his allegations would not entitle him to relief. His claim must therefore be dismissed. See Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998).

5.     Failing to File an Effective Direct Appeal

Finally, the defendant argues,

[Appellate] Counsel Michael Gooch did a half-hearted job on direct appeal. He should have [raised] an issue on insufficient evidence. Grounds 1 thru 11 of this motion should have been brought up on direct appeal. In fact defendant did ask that some of these issues be brought up. Instead Mr. Gooch told the defendant we could only raise a couple issues or the court of appeals would not take it seriously.

(Filing 175 at 26-27.)

"Reasonable appellate strategy requires an attorney to limit the appeal to those issues counsel determines have the highest likelihood of success." Gee v. Groose, 110 F.3d 1346, 1352 (8th Cir. 1997). See also Otey v. Grammar, 859 F.2d 575, 580 (8th Cir. 1988) (quoting Smith v. Murray, 477 U.S. 527, 536 (1986)). For the reasons set forth above, I find that Mr. Gooch's failure to press claims 1-9 and 11 on direct appeal represented reasonable appellate strategy. It

_____

[9]I note parenthetically that I have considered and dismissed all of the defendant's specific arguments (made elsewhere in his motion) that are founded upon excerpts from the trial transcript. (See, e.g., supra Part III.M.2.)

30

remains to be determined, however, whether Mr. Gooch's failure to raise claim 10 on direct appeal amounted to ineffective assistance.  Therefore, the defendant's argument that Mr. Gooch provided constitutionally ineffective assistance on appeal remains viable to that extent.

In summary, I find that the record conclusively establishes that the defendant is entitled to no relief on his claim that Mr. Gooch provided ineffective assistance at trial and on appeal, except to the extent that his claim is based upon Mr. Gooch's failure to raise the issue of prosecutorial vindictiveness.

### N.    Claim 14: The Cumulative Effect of All Errors Violated the Defendant's Constitutional Rights

The defendant argues that his rights to due process and a fair trial "have been 'so' violated as to make a 'farse [sic] and mockery' of these whole proceedings."  (Filing 175 at 27.) As I have explained above, however, only one of the claims raised by the defendant merits an evidentiary hearing.  Claim 14 will be dismissed.

### O.    Claim 15: The Eighth Circuit Court of Appeals Reached an Improper Conclusion in this Case

Finally, the defendant argues that the Eighth Circuit reached an "improper conclusion" in his case.  (Filing 175 at 27.)  Specifically, he argues that the court erred when it noted that "witnesses . . . testified that they observed DeGarmo buying large quantities of methamphetamine and selling methamphetamine in smaller quantities to numerous individuals." United States v. DeGarmo, 450 F.3d 360, 366 (8th Cir. 2006).  This court is not in a position to overrule the conclusions of the Eighth Circuit.  The defendant's claim must therefore be dismissed.

**IT IS ORDERED** that the defendant is entitled to an evidentiary hearing on the following claims: 1) the defendant was the subject of prosecutorial vindictiveness, and 2) defense counsel's failure to raise a prosecutorial vindictiveness claim amounted to ineffective assistance of counsel.

**IT IS FURTHER ORDERED** that in all other respects, the defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, filing 175, and his motion for an evidentiary hearing, filing 176, are denied.  The request for counsel contained in filing 177, is granted and the Federal Public Defender for the District of Nebraska is appointed to

represent the above-named plaintiff in this matter.   In the event that the Federal Public Defender accepts this appointment the Federal Public Defender shall forthwith file a written appearance in this matter.  In the event the Federal Public Defender should decline this appointment for reason of conflict or on the basis of the Criminal Justice Act Plan, the Federal Public Defender shall forthwith provide the court with a draft appointment order (CJA Form 20) bearing the name and other identifying information of the CJA Panel attorney identified in accordance with the Criminal Justice Act Plan for this district.

 Dated September 24, 2007.

      BY THE COURT

      s/ Warren K. Urbom
      United States Senior District Judge